Please call the case then. 3-18-0253, people of the state of Illinois, Appalachia, by Gary Ganinovich v. Darcy Morris, Appellant, by James Wozniak. Please proceed. May it please the court, counsel, my name is James Wozniak with the State Appellant Defender's Office and I represent the appellant in this matter, Darcy Morris. Now as of at least five times, both orally and verbally, Darcy Morris requested to represent himself to the trial court. At the end of the day though, when he said he was ready to proceed, he apologized to the court, right? He, after several oral requests and multiple written requests, he eventually was represented by counsel at a subsequent... He eventually had two counsel, didn't he? He eventually, yes, had a subsequent different post-plea counsel, correct? Well, didn't he when he agreed to be represented by counsel, wasn't there William Lawful and another attorney? Mr. Lawful represented him in the trial court through the plea proceedings and then he eventually on post-plea proceedings had another counsel appointed for him as well. Okay. Who was Brown, counsel Brown? I don't recall which was the name of the post-plea counsel. I think there was another counsel, but go ahead. Mr. Lawful was the one that spoke often for all the hearings. Correct. And he was there at the plea hearing as well. He was also there at the May 29th hearing where Mr. Morris made his first request to represent himself. In fact, it was his attorney that first alerted the court saying that Mr. Morris wanted to represent himself. At that hearing, Mr. Morris said at three different times, I'm going to represent myself. I want to work my case myself. You know, but see, then at the, like you said, at the very end of the day, then he said, this is after he said, I'm sorry about the way I said this, you know, I'm paraphrasing, before that then he agreed he's going to proceed with the two attorneys, right? But that's at the end of the day. As said by justices. He does go forward with the two attorneys, but I wouldn't say that he's agreeing, saying I want to be now represented by counsel. He's recognizing the futility of asking the court to represent himself. He's filed. Now, how could you say that when the court, the court ever formally denied? Never formally denied his request, just never accepted his request or even acknowledged his request. So that May 29th hearing. What is the trial counsel supposed to do upon the defendant's request to represent himself? What is trial counsel supposed to do? No trial or trial court admonish him pursuant to rule 401A. And what are those admonishments? The nature of the offense, the penalties of that offense, that he has a right to be represented by an attorney and that if he cannot afford an attorney, an attorney can be provided for. Now, would that be the first time in a criminal proceeding of this nature that he would be so admonished? It wouldn't necessarily be the first time. Is this a first appearance or arraignment? This is not a first appearance or arraignment. It is. On the May 29th, it's not a first appearance or arraignment. So clearly in the proceedings we would find admonishments given to the defendant earlier. There would be admonishments earlier in the proceedings of his, the nature of the offense for certain and the penalties. He was obviously appointed the public defender. I don't recall the exact hearing or where that occurred, but my guess is. So when is 401A supposed to be given by the trial court to the defendant? Under the case law is when a defendant makes a clear, unequivocal and not unambiguous request to represent himself. That triggers rule 401A for the court to admonish the defendant of that. And if he understands those admonishments to then allow him to represent himself. So the error here is really twofold. It's not just the lack of. I'm just asking about that prior case law, because when you go through the 401A admonishments, what of those three admonishments really goes to his right to self-representation? Other than the rule exists to admonish the defendant so the court can make sure that he understands. Make sure he knows that he has a right to an attorney, one can be appointed. Didn't by all of this colloquy with the trial judge show in clear fashion he knew he had the right to represent himself? Yes. Because he kept asking for it. He kept asking for it. Correct. And in fact, I believe after the second time at the May 29th hearing where he said I want to work my case myself, he filed a motion that day. And he said here's my motion. And I think on the record the court says you're not going anywhere, Mr. Morris. Stay right there. And then had further discussion with him where again he said I want to go pro se. And in that written motion he says I'm invoking my Sixth Amendment right to proceed pro se. He followed it up with a written motion on June 2nd, on June 26th, where he again asked to represent himself and then on July 31st, 2014, he again said I'm ready to go pro se and fight the case. So are you suggesting that somehow he was badgered or coerced by the trial court in giving up his Sixth Amendment right to self-represent himself? Your question, he has an attorney that's appointed for him to represent him. So that attorney's job is to represent him. Two attorneys. If the court is not going to even acknowledge his request, I agree the court didn't ever formally say I'm not going to allow you to represent yourself. He just kept making the request and the court never acknowledged it, never gave him the Rule 401A admonishment. Do we ever admonish a defendant that he or she has the right to self-represent themselves formally in an admonishment or anything? I don't know that it's in any rule or any particular admonishment that a person has that right, but they can still invoke that right. And once they invoke that right, Rule 401A applies. And again, if he understands those admonishments, he's supposed to be allowed to represent himself. I think the thing here that's important is one of the reasons why Mr. Morris wanted to represent himself. He believed he had, in reviewing the discovery and the evidence, that he had a defense of an that's the reason he wanted to self-represent? There was discussion at several hearings, and I believe in the motions, that that's what the defense that he wanted to present, and his attorney would not. And his attorney, on the record, said, in fact, I believe now, as a recollection from the record, where Mr. Brown comes into the public defender and had a discussion with the court that he and Mr. Loeffel had sat down with Mr. Morris and went over them, didn't believe that this was a defense that could be raised. You know, I'm having trouble understanding the arguments now, because in this case, the defendant clearly stated to the judge, well, I'm sorry, you know, I'm paraphrasing. I'm sorry about the way I acted before. I want to proceed now with the attorneys. Then they proceeded to a trial, where a jury was selected. Then the attorney said, here we have a defendant who knows how to say things. Knows how to say, I want to be represented. I don't want to be, you know, I don't want to be represented. I want to be represented. So you've got somebody who we know can say things. He says, I want to proceed with the attorneys. They proceed. They select a jury. And then the attorney says, well, he wants to plead guilty. So he pleads, right? I agree. That's the factual scenario. But again, you have a defendant over the course of over two months has made repeated requests orally and in writing that he wants to represent himself. And the court doesn't even acknowledge that request. I mean, they have a discussion about it, but it doesn't say, I'm going to grant it. Here's rule 401A. I'm going to grant your request. Or I'm going to deny your request. It doesn't appear that there was ever an occasion where he said, well, now we'll proceed with, that I want to proceed right now, this minute, you know, with a hearing on this. And because then eventually he says, no, I want to go ahead. But all he has to do is make a clear, unequivocal, unambiguous request to represent himself. When he mentions that in court and they don't have a forum proceeding that day, that should stop everything. You can't have a situation where the defendant says, now I know I want to go along with my attorneys. That can never happen under your view. I mean, isn't that really what you're asking? On the facts of this case, Mr. Morris, on May 29th, requests three times and files a motion that I want to represent myself. And I argue it's clear, it's unambiguous. But in essence, aren't you saying that if a defendant mentions that, nothing else can happen until, even if a defendant says, no, Judge, I'm sorry, I want to go ahead with the lawyers. That can't have any impact because those words were spoken before. I believe that, and there's obviously cases where someone makes a clear, unequivocal, unambiguous request. And then there's discussion between the court or maybe even the court gives the person a chance to think about it. And they come back and they say, okay, well, I want to go forward with the counsel or equivocates the next time that they speak with the court. And in those cases, sometimes the court has found that then it was not a, it didn't trigger the right to self-representation, the Rule 401 admonishments. But here, what is the impact legally of the defendant's statement just before they did later on proceeded to the trial and they picked a jury? And when you return to court after that continuance, where the judge didn't deny or rule on any of this stuff because it was never a formal hearing, and when the defendant apologized and then said he wanted to go ahead with lawyers, what legal impact did that have, those statements from the defendant? What legal impact did that have? I believe based on his multiple requests beforehand, it had no legal impact. I don't think that this court should say that now he's equivocated or he's acquiesced to the court's decision because the court never. There was no court decision. Well, that's one of the issues. There was no court decision before saying, no, I'm not going to let you. Well, there was a court decision to not admonish him pursuant to Rule 401A. I think it ties into what Justice Kruger is asking. You're focusing on what happened up until July 31st. You say he asked for counsel, he was upset, he said he could do it better than his lawyer was doing it, and on July 31st Justice Lyons kind of ducked that issue and just didn't rule. You are not addressing what happened after July 31st. The apology Justice Carter is talking about happened on August 8th. I want to understand your theory. Is your theory that Judge Lyons should have allowed him to proceed pro se on July 31st? I believe Judge Lyons should have allowed him to proceed on May 29th, but for sure by July 31st. So is it your theory that if Judge Lyons had listened to him in May, in June, and in July, we would have never gotten to the point of needing an apology from the defense? Correct. So the time frame of the error is before the acquiescence by the defense? Yes. I would argue that the error occurred on May 29th, but I think when you add on May 29th, the June written motions, and then the July 31st hearing, a hearing at which, again, when he asks to represent himself, it appears you can't exactly tell why the prosecutor, but the prosecutor says something to the effect of, we should inquire further into something that the defendant said or requested. It doesn't explicitly say his request to represent himself, and the judge says, we're done here and we're continuing to the next court date. When he explains the reason that happened on August 8th, he says, this is a serious murder case, and I really want you to think about it, and that's why I didn't address it. Let me ask you just one really quick question. If Judge Lyons had said on May 29th or June 24th or July 31st, okay, you were being allowed to represent yourself, what would you be arguing here today if he was self-represented in the murder trial? Well, it didn't proceed to a trial. I think Judge Lyons is in a catch-22, damned if he does and damned if he doesn't, because if he allowed the defendant to proceed, per se, I envision the argument you would be making here today is that was an abuse of discretion because these are serious charges. It's obvious this guy needed lawyers. I wouldn't argue that necessarily because I think Mr. Morris was put in the position of being damned if you do, damned if you don't. He's got a defense he wants to present. His lawyer will not present. His lawyer says on the record, I don't think it's a valid defense to raise. So Mr. Morris is saying, I could represent myself and attempt to raise this defense that I think the evidence shows or continue to be represented by my counsel who's not going to raise this defense. And once his right to represent himself was taken away from him, he can't raise the defense because now he's got a counsel that's saying, I'm not going to raise that defense. When the defendant pled guilty, what should be legally the impact of the plea of guilty or what is the impact of the plea of guilty to this claim? Is this claim gone because there's a guilty claim? I would say no, Your Honor. Why so? Because clearly you waived trial rights when you voluntarily and knowingly plead guilty. He waived trial rights. And so what's the scope of trial rights? Well, the error occurred before trial. The error occurred at a hearing where he wanted to represent himself. What's a trial right? As with some of the cases. It doesn't matter. I mean, you waived trial rights, right? He waived the right for the state to prove him guilty beyond a reasonable doubt, cross-examine the witnesses against him at the trial. Again, this error occurred. I don't think the time frame matters. I'm asking what the trial right is. Is the right to self-represent a trial right? It would be a right to represent yourself at a trial, but it would be a right to represent yourself at every hearing up to that trial as well. And so how, when you, are you questioning the knowing and voluntary nature of the plea of guilty? I'm saying that the error in and of itself is a fundamental structural error that isn't waived by a guilty plea, and that Mr. Morris pled guilty to, in some ways, salvage something out of the situation and hopes. What we're doing here is raising this issue. What would his counsel say about a voluntary plea of guilty? Well, he does file a motion to withdraw his guilty plea, saying that this plea was not known and involuntary. Mr. Morris filed in his pro se motion, which was adopted, saying the court violated his constitutional rights. This particular issue is not discussed at the actual post-plea proceeding. So his post-plea counsel doesn't raise this particular issue as an argument or put any witnesses on. Mr. Morris does testify, but there's not a discussion about his. Didn't he just adopt, basically, your client's? The written motion, yes. Yes. Yes. In fact, both counsel held the motion. Yes. Yes. Basically. Yes. Adopted it. Correct. And presented it to the court. Yes. So he never raised it. It was never raised in the hearing itself. Yes. Okay. Well, after August 8th. Yes. The day that Justice Kagan focused on the apology, up until this day, with you representing him, he has never expressed that he doesn't want your help or didn't want the attorney's help. Post motions, post-trial motions, he hasn't changed his mind since August 31st. How do you address that? I'm sorry, August 8th. So, yes, he does not make any requests after the July 31st. But I don't think that not making a request after that, after such unambiguous, unequivocal, clear requests before that, I guess, cancels out the error. And I guess the thought I would, there's a line from a film. If the rule that we follow brings us to this of what use is the rule. So what use is the rule to say that it has to be clear, unequivocal, and not ambiguous, which I would hope that this court and most would say that everything from May 29th to July 31st are such requests, and yet it doesn't trigger Rule 401A. It doesn't allow for him to represent himself. And at some point, yes, he doesn't make any further requests, but the court gave no indication that it was ever going to respect his request because there was never actual formal hearing on his request. There was never admonishments given. You're really asking us to establish a rule in this district that says that if there's any reference to, clear reference to that you want to represent yourself, a defendant can't change his mind. That has to be right then and there. Stop all actions. Just hear that request. Don't give any time under your proposed position. You can't give anybody time to even think about it, none of this. I don't think it would be something new for this court because I think the rule is already established.  Once that happens, then this is, 401A is triggered. It then becomes a factual question of was the request clear, unequivocal, and not a good request. So when you have that request, then the person says, no, I'm going to proceed with an attorney now. That doesn't count. That statement doesn't count. I would say in this case, two months later when that has occurred, no. That doesn't count. So you're saying procedurally what you're saying is when it's clear and unequivocal, the Sixth Amendment right to self-represent has been invoked by the defendant, automatically the trial judges get 401A, which I have no reason why that's even required because it's been given before in these proceedings. Okay? Right. And that the only remedy is for the court to appoint stand-by counsel, which is up to the discretion. Is it not? Yes. The court alone? Yes. Whether objective or not by the defendant? Yes. And that's the proper procedure? I would say, yes. Unless there's later on a request to have stand-by counsel or have appointing counsel made. Correct. And that's to be considered by the trial court? Yes. And then if not granted, that's an appealable issue, right? Yes. Is that the way it works all the time? Yes. That could be an appealable issue, yes. And I think, Justice Carter, if I'm allowed to continue to answer your question here, is that I don't think any stops a trial when a person makes what we'd say, for instance, I want to go pro se. I'm not saying that that's end stop right there and the court necessarily has to say, okay, 401A. I think a court at that hearing can go into some questioning with the defendant so that they, even beyond 401A, to see if they understand everything that's going on, why this person is making this request. Maybe there's something that can be worked out with their trial counsel, and there's definitely a case law where at that point someone equivocates them and this court or other courts have found that that's not a clear and unequivocal request. But here, Mr. Morris is repeatedly saying, no, I want to represent myself. When the court is endeavoring. So how many times, I mean, how long can the trial judge delay, given the 401 required admonishments, meaningless as they are, in my view, at that point in proceedings? How long, how long? I don't know. Between the defendant and the court before. I don't, I can't say what would be either. I don't think there would be or should be a hard and fast rule on that. But I think it should have occurred here on May 29th at some point. And it definitely should have occurred by July 1st. Was the statement by the defendant that he was sorry and that he wants to, because of his comments, he wants to proceed now with the attorneys. Was that clear or not? When he made that statement. I, I mean, it's a clear statement, but I'm not, I don't think, again, that that. No, I'm just, I'm not talking about whether, I know what you purport, what you say is the impact of that delay. Right. But was the statement at that time saying, sorry, Judge, if I would, you know, I was saying before, I want to proceed now with the attorneys. Was, from his record, does that appear to be clear and unequivocal? I think that a court could come to that conclusion, yes. And someone could come to that conclusion that that's a clear and unequivocal statement. But again, in this kind of case, he had a right to representation if he couldn't afford it. Correct. Counsel's time. Thank you, Your Honor. Thank you. Thank you, Counsel. May I please the Court, Counsel. Gary Gennari from the State Supreme Court Prosecutor's Office on behalf of the State. Welcome back. Thank you. Nice to be back. Thank you. A lot of interesting questions. I'm going to start with Justice Holdridge. The thing with respect to the purpose for Rule 401A, indeed, they are admonished long before. But the Supreme Court rule and the purpose behind it simply is to ensure that the defendant, at the time that he decides, in a case such as this where you have a serious charge and you've got serious penalties, the court just wants to ensure that the defendant's eyes are wide open and he knows what he's actually facing. That's really paternalistic, isn't it? Yeah. I mean, this is all paternalistic. Yeah. So to speak. So to speak. That's the rationale for the rule and why it is repeated to him at that time, because the decision to waive counsel on the goal pro se is an important decision. Okay? Now... But it's a protected right in the Sixth Amendment. That is correct. It is a protected right. Now, what I found interesting at the end of counsel's argument was a statement about, in answering your question, about the fact of, well, it's not so much that just because of the fact that the defendant says, I want to go pro se, that the trial judge just has to state and say, okay, rule 401, because quite frankly, that was going to be my alleviant, because that's what I believe the argument here is, is that once May 29th came up and he expressed that desire, as soon as he uttered the words, I want to go pro se, according to the defense argument, the trial judge had to get 401, had to try to make a determination whether it was a clear and unequivocal request. It's always been, and it was my argument, it's always been my position with respect to this, that in a situation like this, where a defendant comes out of nowhere and says, I want to proceed pro se, it's a lot like, and I kind of liken it to, although the inquiry is a little bit different, I kind of liken it to a crankle hearing. I think the trial judge at this point has a duty to engage the defendant in some sort of conversation, something to take and try to ferret out, okay, you're coming in here now and you're asking to take a go pro se. Why? Why is it that you want to go pro se? Have a discussion. And if the court will indulge, I'd like to take and go through. Do you think there's error here? No, definitely not. You're saying the colloquy would show that in effect, I think your argument is, that the colloquy by the trial judge basically was holding a crankled hearing. By making the inquiry and being so informed, my appointed counsel is not presenting the defense that I think should be presented. Correct. And so that inquiry was made. The inquiry was made. And what the trial judge found out was the fact not only that there was a defense, but found out that it was the intervening causation defense based on medical. I believe he also found out that, from what the defendant articulated, was the fact that his whole intervening causation defense was based on the fact that the victim had been released from the hospital, which the defendant indicated wasn't life threatening, was then placed into some sort of a home, after-care type of facility. And two and a half months after that is when the victim then passed away. So in the defendant's mind, the defendant's mind was, I didn't murder him. Now, he does tell the trial judge, I'm not saying that I didn't, in going and doing this, that I didn't do great bodily harm, but I didn't do a murder on him. So the trial judge finds out intervening causation, he's claiming it's medical, but the medical aspect is just simply the fact that he's released from the hospital and dies two and a half months later. And, of course, we as lawyers, judges, we know that there's still causation. There's still that potential for causation. I can't remember the name of the case, but it involved the case of Dr. Volterno, basically was hit in the back of the head during the course of an armed robbery. He died three, four, five days later. Once again, the defendant tried the intervening causation, and basically based on medical, and it fails. It's a very difficult defense to have to take and prove. So the trial judge says, okay, goes to the defense counsel. The defense counsel at this May 29 hearing says, look, I will be more than happy to take and get the medical records. I will review the medical records with the defendant, and we'll go over to see if there is a potential defense hearing, to which the defendant then says, fine, I can go along with that. So now we come down to the July 31 hearing. At the July 31 hearing, what is the problem? The problem is the defense counsel wants a continuance. Why does he want a continuance? To review the medical records, because they just got them. It takes time to get these medical records. And so basically he gets them. He wants to review them with the defendant. The defendant says, no, I want to go to trial. Okay. So now at this particular point in time, what is the trial judge faced with? Request to self-represent, a speedy trial demand, and we're trying to take and satisfy the fact that the defendant wanted the medical records to do the intervening causation defense. What's he going to do? Okay. He's going to take a question. He's going to take a say, look, this is what you wanted. This is what we're trying to give you. Give your lawyer a chance to do this. To which the defendant finally sees the light and says, okay, fine. Well, then we get this. August the 4th is when he writes the letter. August the 8th is when the trial judge says, okay, we've got to bring this whole thing about self-representation, we've got to bring this to a head. We've got to get this finalized. It was at that point that he finds out defense counsel, defense counsel says to him, represents that the defendant was comfortable in proceeding with counsel. And at this particular time, it was now in, I think it was Lofo? And Brown. And Brown. We're both there. And basically the trial judge then said, okay, so he says, so my understanding basically you are agreeing that you are comfortable in now going to trial and having counsel represent you. To which the defendant did acquiesce at R53 of the record, basically did say yes, I'll stay with counsel. Now, this is what happened. This is what occurred at these critical points in the timeline here on this whole concept of requesting self-representation. I think that what the trial judge did here, and I think this ties in with Justice Wright's earlier question about being in a catch-22 with the trial judge. I think the trial judge here realized that, and what he was trying to do is he was trying to accommodate the defendant, accommodate his defense, and realizing the nature of that defense, wanted to make sure that it was thoroughly investigated by someone who would have an idea as to what to look for. And so under the circumstances of this case, it's not so much that the trial judge refused to let the defendant proceed or erred by not giving 401. I think he did what cases, I think it was, my cases of Owens and Foster and Burton. Those three cases, Burton's in Illinois Supreme, Foster's 4th District, and Owens is a 3rd District decision in front of this Court. Basically, they all, in one way, shape, or form or another, touch upon exactly what was done here. Colloquially speaking, it's not so much that the trial judge is basically saying, hey, I think it's a bad idea, my idea is better than yours. He's not doing that. He's just simply trying to make sure to accommodate the defendant, accommodate his defense, and give the defendant the opportunity to present a potential defense if it was possible. And so in this case, the trial judge, I think, acted properly. The defendant clearly acquiesced in every one of the hearings, acquiesced to what was going on. And I don't think the trial judge committed any error in doing what he did by explaining and talking to the defendant. So on a substantive level, we don't believe that there was any error here at all. There was no denial. There was no requirement for the 401A. Now, having said that, I'm going to probably, I kind of put the cart before the horse here, because normally what I would do is I would speak about procedural matters first. And in this case, two procedural matters, one that was definitely brought up, one I think that was kind of inferred. The first one is by pleading guilty, he was basically pleading guilty waives all constitutional errors. And the fact that this constitutional error occurred when it did, in May, at a pre-trial, doesn't make any difference. It's the fact the guilty plea waives all those errors. And so that's problem number one. Problem number two is forfeiture. Well, that's a problem for the defendant. That's a problem for the defendant, yes. Not for you. Not for me. It's forfeiture because it was never raised. The issues that were raised in his, in the defendant's motion to cause guilty plea was the guilty plea was forced because his sister and niece were threatened with greater charges Again, the medical records, ineffective assistance because the counsel visited the family to convince the defendant to take the guilty plea, ineffective assistance of counsel to refuse to use the medical evidence, and ineffective assistance of counsel to failure to get this first-degree murder reduced to a lesser-included offense. Those are the allegations. Nothing in there at all about any kind of denial. So based on ENOT, no objection, nothing in the post-trial motion, so therefore it's forfeited. Now, the defendant has argued plain error. Based on counsel, plain error in this particular situation is not applicable. Plain error is not applicable in a guilty plea because Rule 615A does not speak to waivers that result from the voluntary relinquishment of known rights. So 615, because this all ties in. Plain error ties in with the forfeiture. It ties in with the guilty plea. But you have to have error first. And you have to have error first. I mean, that's the beginning. Well, what usually happens is the way the arguments usually go is you argue forfeiture and then the argument is whether it's plain error, okay, and you have to establish a basis whether it's going to be under Prong 1. Of course you have to find out. You have to establish there is error. Right. But then what you do is once you bring that up. Once that's established. Right. Once you bring that up, then the first thing to do is to determine whether there is plain error, you go into the fact of was there error at all. That's what I'm saying. Right. Correct. But in this particular case, this 615A doesn't apply, and that's based on the counsel decision. So in this particular situation, what we have is we have procedural hurdles that must be overcome. And the other thing I want to take and say is the defendant has argued second-pronged plain error, and he's also argued that it's not harmless, okay, that basically second-pronged plain error cannot be harmless. And what's interesting is the fact that while an error may not be considered structural error has nothing to do with harmlessness. That's correct. But the thing is the argument has been made. The defendant in his brief is trying to make somehow of a connection between harmless error and second-pronged plain error. And that's the only reason why I bring it up is because I agree with you, harmless error has nothing to do with second-pronged, and simply because an error is harmless doesn't make it structural error is what I'm saying. Or we're following what the Supreme Court said. Structural error is not structural error. Correct. Like I said, I'm just responding to an argument that was presented in the brief, how I interpreted that argument just to make sure that our point is clear. But you have to have a determination of error first. You've got to have a determination of error first. Because all of that error analysis is whether plain error, once established, is reversible error. Correct. Counsel has two minutes. If there are any other questions, I'll be happy. Otherwise, people would request that this Court affirm charges. You knew I was going to have a question. You looked right at me. I want to look at the history. We've had this gentleman involved in a prior appeal. Corresponding to this conviction, in the past, the notice of appeal, I believe, was filed in 2015, and our decision was issued in 2017. The case was originally remanded to the trial court. In all instances, Mr. Morris, throughout those years, was represented by counsel. And during those years, he even had a third and possibly a fourth attorney appointed to him. And Attorney Bach helped him craft his post-trial motion into a more formal post-trial motion. In all those years, including up until today, it appears to me that Judge Lyons made the right decision, that this defendant didn't want to represent himself. What is your position on us looking at the entire phonology, taking judicial notice of the entire phonology here, including our prior appeal, to conclude that he didn't want to proceed pro se? I would say that that would be, when I say within the Court's discretion to take a look at, I think it bolsters, because what you're trying to do at this point is you're trying to decide whether or not the defendant has made a clear and unequivocal request for counsel. What we're trying to decide is, is there structural error? Did this person want to represent himself and was precluded from doing it? Which is kind of interesting, because one of the things I have noted here is that I noted also in my brief, somewhere in one of his pleadings is a thing called Note 12, and he references the fact that what he wanted to take and do is he wanted to take and have the presentation of new medical evidence presented by, quote, new counsel, close quote. So I'm tying this in with what Your Honor is saying. My question is, do you think we can take judicial notice of the fact that he didn't renew his request to proceed pro se? Definitely. After August 8th. Definitely. From that date until today. Yeah. I think definitely I think you can. And for sure, the fact that after August the 8th that he never requested counsel, never objected, and as Your Honor pointed out, Mr. Darcy was very vociferous. He was very vocal. I think it's August 8th of 2014, and here we are in 2019. But you've answered my question and your question. Thank you, Your Honor. Thank you. To your question, Justice Wright, obviously this Court can take judicial notice of whatever this Court feels appropriate to take judicial notice of. My question is, do you think it's allowable for me to do that? I would say with the facts of this case and this particular issue and error, no. Because – I understand that's a respectful no. It is, Your Honor. And the reason would be is that, again, it's what point is the law in the rule? If I'm to make a request – and I think here, again, the facts of this is that the Court just really never itself made a clear unambiguous attack on – I understand your answer, that your argument is, Judge, you can't look at anything beyond May 29th when you make it. Correct. So I appreciate that, and I think I will put that information in the back of my mind. Thank you, Judge. Thank you. As to the guilty plea waiving this, as the State argues, constitutional error, I guess the question would be is how many constitutional errors or how grave of a constitutional error would we require that it's not waived by a guilty plea? We could reverse the scenario. Suppose a person walks into a court and is representing themselves and says, I want an attorney, and the court says, no. Here's the entry of appearance for my attorney. Don't care. You're not going to be represented by counsel. We'd all agree, grave, terrible constitutional error, Sixth Amendment error out of the same amendment that the right to self-representation is derived, and then that person decides, well, I plead guilty because I'm not represented by counsel. What if a person wants to testify because it's the only way they're going to get their defense on and the court denies their right to testify? Again, would we hope to ever see that? No. But a clear constitutional error and the person says, well, I'm going to salvage something out of this situation and plead guilty, throw myself upon the mercy of the court, because I know if I proceed to trial, I'm going to lose. Does a guilty plea waive that constitutional error? And I think that that never happened here. Correct. That never happened here was a request for a constitutional right. Yes. Okay. And then later on, an acquiescence or revocation by accepting counsel. Actually, to counsel. The representing at trial. Correct. Subsequent proceedings. Correct. Were waiving trial and entering a negotiated plea. Correct. And being represented by counsel. From what I have in my opening brief, and the justices have a different recollection of the record, from the August 8th hearing, Mr. Morris, so his counsel says Mr. Morris wants to address the court. I believe that Mr. Morris would be comfortable proceeding with the representation, that is with attorneys, one or two attorneys, representing him at his trial, which is currently set in September. And the court says, okay, do you have any, would you like to fill me in on anything, Mr. Morris? I'm happy to hear from you. And Mr. Morris says, yeah, I would like to. First, I'd like to apologize for the incident, for being disrespectful of the court. Last, on the 31st of July, I'd like you to accept my apology for being disrespectful. I also want to know how do I go about seeing to get a lesser offense on my verdict. He doesn't even acknowledge his attorney, saying like, well, yeah, I'll agree to be represented by these attorneys. And is it? But he doesn't renew his request to assert a Sixth Amendment right to self-represent either, does he? He does not. But he's also, at this point, made five separate requests. And if you count the three separate requests in the May 29th hearing, a total of seven requests to represent himself in the preceding two months, that the court has that. Back to my original question. Do you think the trial court warmed down into accepting it in revoking his initial request? Yes. I mean, warmed down or just? In simple terms? Yes. He accepted the fact it would be futile to continue to ask the court to represent himself. That's how I would interpret what happened at the August 8th hearing and everything subsequent. What exceptions would you point out to us regarding that that exists in the case law from the Supreme Court with regard to the principle that a guilty plea waives all these errors? What cases show the exceptions that this case fits into? Guilty plea does not waive the right to the effective assistance of counsel, which is derived from the Sixth Amendment, which this right is as well. I believe I cited another case where it doesn't waive your right to remain silent. I believe that was at a subsequent sentencing where a person pled guilty and the court endeavored to get some answers from the defendant. So there is cases that I think can be cited and relied on by this court why this particular denial of this constitutional right, the right to self-representation, is not waived because he pled guilty. There's not a case specifically on this, but you're saying by analogy? Not that I found or cited in the briefs or that the State cited to the contrary. But by analogy to some other cases? Correct, yes. Counsel's time. Mr. Wilson, before you conclude, I just want to tell you that I appreciated the statement of facts in the brief. It was well-balanced. It included facts that would enable spirited decision or discussion here today. And I appreciate the professionality of that statement. Thank you, Your Honor. Your Honors, if there's no other questions, we'd ask that Mr. Morris's conviction be reversed in this case for further proceedings. Thank you. Thank you, counsel. Thank you both for your arguments. This court will take this case under advisement, under decision in the near future.